**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES, <br><br> Plaintiff, <br><br> v. <br><br> AT&T SERVICES INC., AT&T MOBILITY LLC, AND AT&T CORP., <br><br> Defendants. | Case No. 2:23-cv-00468-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S
COMPLAINT FOR PATENT INFRINGEMENT**

Defendants AT&T Services, Inc., AT&T Mobility LLC, and AT&T Corp. (collectively, "Defendants" or "AT&T") answer Plaintiff XR Communications, LLC dba Vivato Technologies' ("XR" or "Plaintiff") Complaint for Patent Infringement ("Complaint") against Defendants as follows:

**INTRODUCTION**

1.      AT&T admits that the Complaint purports to make a claim for patent infringement of United States Patent Nos. 11,750,256 (the "'256 Patent"), and 11,777,569 (the "'569 Patent") and collectively refers to the patents as the "Asserted Patents." AT&T lacks knowledge or information sufficient to form a belief as to the ownership of the Asserted Patents. AT&T denies it has infringed any of the Asserted Patents and denies any remaining allegations in Paragraph 1.

2.      AT&T admits that electronic devices connect to the Internet wirelessly and allow people to communicate with each other. AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2, and therefore denies the same.

3.     AT&T admits that Guglielmo Marconi was granted a British Patent (No. 12039), but denies that it occurred in 1896.  AT&T admits that British Patent (No. 12039) was titled "Improvements in Transmitting Electrical impulses and Signals, and in Apparatus therefor." AT&T admits that Guglielmo Marconi shared the Nobel Prize in Physics with Karl Ferdinand Braun in 1909.  AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 3, and therefore denies the same.

4.     AT&T admits that Guglielmo Marconi shared the Nobel Prize in Physics with Karl Ferdinand Braun in 1909.  AT&T admits that Karl Ferdinand Braun gave a Nobel Lecture dated December 11, 1909.  AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4, and therefore denies the same.

5.     AT&T admits that Karl Ferdinand Braun is credited with inventions related to radio waves.  AT&T admits that Karl Ferdinand Braun's December 11, 1909 Nobel Lecture described his experiments with antennas.  AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5, and therefore denies the same.

6.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore denies the same.

7.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7, and therefore denies the same.

8.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8, and therefore denies the same.

9.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9, and therefore denies the same.

## THE PARTIES

10.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10, and therefore denies the same.

11.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11, and therefore denies the same.

12.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12, and therefore denies the same.

13.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13, and therefore denies the same.

14.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14, and therefore denies the same.

15.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15, and therefore denies the same.

16.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16, and therefore denies the same.

17.     AT&T Services, Inc. admits that it is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard Street, Dallas, Texas 75202, and may be served through its registered agent CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

18.     AT&T Mobility LLC admits that it is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319, and may be served through its registered agent The Corporation Trust Company, at 1209 Orange Street, Wilmington, DE 19801.

19.     AT&T Corp. admits that it is a corporation organized and existing under the laws of the state of New York, with a principal place of business at One AT&T Way, Bedminster, New Jersey, 07921-0752, and may be served through its registered agent CT Corporation System, at 28 Liberty Street, New York, NY 10005.

## JURISDICTION AND VENUE

20.     AT&T admits that the Complaint purports to state a claim for patent infringement arising under Title 35 of the United States Code.  AT&T admits that this Court has subject matter jurisdiction over patent-law claims generally pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.     To the extent that the allegations of Paragraph 21 of the Complaint sets forth legal conclusions, no response is required.  For purposes of this action only, AT&T does not challenge that AT&T is subject to personal jurisdiction within this District.  AT&T admits that one or more of the Defendants have conducted and conduct certain business in the State of Texas and in the Eastern District of Texas.  AT&T denies the remaining allegations set forth in Paragraph 21.

22.     To the extent that the allegations of Paragraph 22 of the Complaint set forth legal conclusions, no response is required.  AT&T admits that at least one of the Defendants sells products and/or services in the Eastern District of Texas.  AT&T denies that Defendants purposefully and voluntarily placed products and/or services into the stream of commerce that practice the Asserted Patents.  AT&T denies any remaining allegations set forth in Paragraph 22.

23.     To the extent that the allegations of Paragraph 23 of the Complaint set forth legal conclusions, no response is required.  AT&T denies that it engages in any acts of infringement in this District or elsewhere.  AT&T, however, does not contest whether venue in this District is proper pursuant to 28 U.S.C. § 1400(b) for purposes of this action only; but it does deny that this is the most convenient forum in which to try this case.  The remainder of the allegations in

Paragraph 23 regarding alleged "regular and established places of business" otherwise contain legal conclusions to which no response is required. AT&T further denies any remaining allegations of Paragraph 23.

24.     AT&T admits that one or more wireless telecommunications networks in the United States have been advertised as providing coverage within the Eastern District of Texas under the brand name "AT&T." AT&T denies all remaining allegations of Paragraph 24.

25.     AT&T admits the document referenced in Paragraph 25 speaks for itself.

26.     AT&T admits the website referenced in Paragraph 26 speaks for itself. AT&T admits that mobile devices have been sold in stores with the AT&T brand, including within the Eastern District of Texas. AT&T denies all remaining allegations of Paragraph 26.

27.     To the extent that the allegations of Paragraph 27 of the Complaint set forth legal conclusions, no response is required. AT&T denies that it admitted or did not contest that this District was a proper venue for patent infringement in *Sol IP v. AT&T Mobility LLC*, No. 2:18-cv-526, Dkt. 113 (E.D. Tex. Apr. 4, 2019). In its Answer at ¶ 14, AT&T Mobility LLC did not challenge the propriety of venue in this District, but reserved the right to move to transfer or move to change this case to a more convenient forum. AT&T further denies that it admitted or did not contest that this District was a proper venue for patent infringement in *IPCom, Gmbh & Co. KG v. AT&T Inc., et al.*, No. 2:20-cv-322, Dkt. 21 (E.D. Tex. Dec. 18, 2020). In its Answer at ¶ 14, AT&T denied that "venue is proper in this judicial district." AT&T admits that (1) AT&T Mobility LLC in *Sol IP* and (2) "certain of the Defendants" sued by IPCom admitted that they had conducted business in the State of Texas and the Eastern District of Texas. AT&T denies all remaining allegations of Paragraph 27.

28.     AT&T admits the website referenced in Paragraph 28 speaks for itself.  AT&T also admits that mobile communication network services have been provided under the AT&T brand using equipment located in the Eastern District of Texas.  AT&T denies all remaining allegations of Paragraph 28.

<u>**COUNT I**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 11,750,256**</u>

29.     No response is required to Plaintiff's reference and incorporation of Paragraphs above.  To the extent a response is deemed required, AT&T repeats and incorporates by reference, as if fully set forth herein, their answers to Paragraphs 1-28, as set forth above.

30.     AT&T admits that Exhibit 1 of the Complaint purports to be a true and correct copy of U.S. Patent No. 11,750,256 (the "'256 Patent") entitled "Directed Wireless Communication".  AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 30, and therefore denies the same.

31.     AT&T denies the allegations in Paragraph 31 of the Complaint.

32.     AT&T denies the allegations in Paragraph 32 of the Complaint.

33.     AT&T denies the allegations in Paragraph 33 of the Complaint.

34.     AT&T admits that Exhibit 2 attached to the Complaint purports to be a claim chart related to the '256 Patent.  AT&T denies the remaining allegations in Paragraph 34 of the Complaint.

35.     AT&T denies the allegations in Paragraph 35 of the Complaint.

36.     AT&T denies the allegations in Paragraph 36 of the Complaint.

37.     AT&T denies the allegations in Paragraph 37 of the Complaint.

38.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint, and therefore denies the same.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 11,777,569**

39.     No response is required to Plaintiff's reference and incorporation of Paragraphs above.   To the extent a response is deemed required, AT&T repeats and incorporates by reference, as if fully set forth herein, their answers to Paragraphs 1-38, as set forth above.

40.     AT&T admits the Exhibit 3 to the Complaint purports to be a true and correct copy of the U.S. Patent 11,777,569 (the "'569 Patent") entitled "Directed Wireless Communication". AT&T lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 40, and therefore denies the same.

41.     AT&T denies the allegations in Paragraph 41 of the Complaint.

42.     AT&T denies the allegations in Paragraph 42 of the Complaint.

43.     AT&T denies the allegations in Paragraph 43 of the Complaint.

44.     AT&T admits that Exhibit 4 attached to the Complaint purports to be a claim chart related to the '569 Patent.   AT&T denies the remaining allegations in Paragraph 44 of the Complaint.

45.     AT&T denies the allegations in Paragraph 45 of the Complaint.

46.     AT&T denies the allegations in Paragraph 46 of the Complaint.

47.     AT&T denies the allegations in Paragraph 47 of the Complaint.

48.     AT&T lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint, and therefore denies the same.

**PRAYER FOR RELIEF**

These Paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. AT&T denies that Plaintiff is entitled to any relief and specifically denies all the allegations and prayers for relief contained in Paragraphs (a) through (f) of Plaintiff's Prayer

for Relief.

## DEFENSES

Subject to the responses above, AT&T alleges and asserts the following defenses in response to the allegations, without admitting or acknowledging that AT&T bears the burden of proof as to any of them or that any must be pleaded as defenses.  AT&T specifically reserves all rights to allege additional defenses that become known through the course of discovery.

### FIRST DEFENSE
### (NO INFRINGEMENT)

49.     AT&T has not infringed and does not infringe any valid and enforceable claim of the Asserted Patents, in any manner including under any section of 35 U.S.C. § 271, including 35 U.S.C. §271(a), (b), and/or (c), willfully or otherwise.  AT&T has not performed any act and are not proposing to perform any act in violation of any rights validly belong to Plaintiff.

50.     AT&T does not indirectly infringe any asserted claim and, in particular, do not induce any third party to perform all of the required steps of any asserted method claims while using any of the accused products.

51.     AT&T has not infringed and does not infringe either literally or by the doctrine of equivalents.

52.     AT&T does not supply any component that contributes to infringement of any valid claim.

### SECOND DEFENSE
### (INVALIDITY)

53.     The asserted claims of the Asserted Patents are invalid for failure to satisfy the requirements of 35 U.S.C. § 100, *et seq.*, including, but not limited to, one or more of the following: 35 U.S.C. §§ 101, 102, 103, and/or 112.  For example, each claim is invalid in view of the

references cited by the Examiner and arguments made by the Applicants during prosecution of the applications that issued as the Asserted Patents.

### THIRD DEFENSE
### (NOTICE, DAMAGES, AND COSTS)

54.     Plaintiff's claims for damages are statutorily limited under 35 U.S.C. §§ 252, 286, 287, or 307.  To the extent Plaintiff or its licensees have failed to comply with the marking and notice requirements of 35 U.S.C. § 287(a), Plaintiff's requested relief is barred, in whole or in part, for any damages arising from AT&T's alleged infringement prior to at least the date of the filing of the original Complaint or otherwise limited by 35 U.S.C. § 286.

55.     Plaintiff is barred from recovering costs in connection with this action under 35 U.S.C. § 288.

56.     Plaintiff's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Plaintiff is not entitled to a double recovery.

### FOURTH DEFENSE
### (PROSECUTION HISTORY ESTOPPEL)

57.     Plaintiff's claims are barred by the doctrine of prosecution history estoppel based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the Asserted Patents before the United States Patent and Trademark Office and/or during the prosecution of related patent applications.

### FIFTH DEFENSE
### (FAILURE TO STATE A CLAIM)

58.     The Complaint fails to state a claim upon which relief can be granted.

**SIXTH DEFENSE**
**(LICENSE, IMPLIED LICENSE, AND/OR EXHAUSTION)**

59.     Plaintiff's claims for patent infringement are precluded in whole or in part (i) to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to AT&T by any entity or entities having express or implied licenses or covenant not to sue or assert to the Asserted Patents and/or (ii) under the doctrine of patent exhaustion. Additionally, Plaintiff's claims for patent infringement are precluded in whole or in part to any direct licenses or agreements/covenants not to sue that pertain to AT&T.

**SEVENTH DEFENSE**
**(INEQUITABLE CONDUCT)**

60.     Plaintiff's enforcement of at least the '256 Patent and the 569 Patent is barred by inequitable conduct as follows:

61.     The '256 and '569 Patents both ultimately arose from an application originally filed in 2003 as Application Serial Number 10/700,329.

62.     By fall of 2007, the '329 application was owned by Vivato Networks, Inc.

63.     In November 2007, Aequitas Capital Management, Inc. ("Aequitas Capital") agreed to loan up to $1,000,000 to Vivato Networks, with an initial advance of $300,000, secured in part by the patent applications.

64.     In December 2007, Vivato Networks merged with Catcher Holdings, Inc. ("Catcher"), and transferred the patent applications to Vivato Networks Holdings, Inc. ("Vivato Holdings"). Vivato Holdings granted Catcher the exclusive right to prosecute the applications. On April 1, 2008, Catcher ceased operations and terminated all employees due to a lack of working capital.

65.     In late April or early May 2008, Brooks withdrew as the attorney of record for the '329 application.

66.     In June 2008, Aequitas Equipment Finance, LLC ("Aequitas"), assignee of Aequitas Capital's security interest in the applications, sought to foreclose on, *inter alia*, the '329 application, which became abandoned between June and July 2008 for failure to respond to an office action from the United States Patent and Trademark Office ("USPTO").

67.     In April 2009, Aequitas obtained a foreclosure judgment against Vivato Networks and Vivato Holdings, and took titled of the abandoned applications through a sheriff's sale.

68.     In fall 2009, Carl J. Schwedler, attorney for Aequitas, filed petitions to revive, *inter alia*, the '329 application.  As part of that petition, Schwedler represented that the entire period of delay, from the due date for filing a reply to the pending USPTO office action to the date of the petition, was unintentional under 37 C.F.R. § 1.137(b)(4).

69.     Upon information and belief, Schwedler's representation that the delay in prosecuting the application was unintentional was false.

70.     The USPTO denied the petition to revive the '329 application.  In December 2009, Aequitas sold its patent portfolio (including the still-abandoned '329 application) to Plaintiff XR.

71.     In 2010, XR took responsibility for prosecuting the patent application.

72.     On November 8, 2010, Daniel P. Burke, an attorney for XR, filed a renewed petition to revive the '329 application.  In doing so, Burke represented to the USPTO that the entire period of delay from the due date for filing a reply to the pending USPTO office action to the date of the petition was unintentional.

73.     Upon information and belief, Burke's representation that delay in prosecuting the applications was unintentional was false, and XR itself would not have had knowledge of the

11

circumstances surrounding the abandonment of the applications.

74.     Upon information and belief, the delay that resulted in abandonment of the '329 application was not unintentional.

75.     Catcher's SEC filings reflect that, at least as of September 2007, it likely had sufficient funds to pay for prosecution of the application.  Moreover, Catcher's wholly-owned subsidiary Vivato Networks had received an agreement for a $1,000,000 loan in November 2007 (with $300,000 advances), which could have been used to pay for prosecution of the '329 application.

76.     Therefore, upon information and belief, Aequitas and XR falsely certified that the entire period of delay in replying to the PTO was unintentional.

77.     Upon information and belief, the false representations that the entire period of delay in responding to the USPTO with respect to the '329 application was unintentional was made with intent to deceive the USPTO into granting the petitions to revive. Specifically, upon information and belief, the following petitions to revive (and requests for reconsideration) contained knowingly false statements made with intent to deceive, and were material to the USPTO's decision to revive the application and ultimately issue the Patents-in-Suit:

      a.    The petition to revive the '329 application, filed on August 28, 2009 by Schwedler;

      b.    The request for reconsideration of the dismissal of the petition to revive the '329 application, filed on November 18, 2009 by Schwedler; and

      c.    The renewed petition to revive the '329 application, filed on November 8, 2010 by Burke.

78.     Upon information and belief, the false representations that the entire period of delay in responding to the USPTO with respect to the '329 application was unintentional were material to the USPTO, because without that false representation the USPTO would not have ultimately granted the petitions to revive and the '256 and '569 Patents never would have issued.

79.     Accordingly, upon information and belief, Aequitas, XR and their counsel engaged in inequitable conduct in reviving the '329 application.

## EIGHTH DEFENSE
## (STATUTORY LIMITATIONS)

80.     To the extent certain equipment accused of infringing the Asserted Patents are used by and/or manufactured for the United States Government and/or public good, Plaintiff's claims involving AT&T may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## NINTH DEFENSE
## (NO ENTITLEMENT TO INJUNCTIVE RELIEF)

81.     XR is not entitled to injunctive relief.  Under *eBay v. MercExchange*, LLC, 547 U.S. 388 (2006), any alleged injury to XR would not be immediate or irreparable, XR would have an adequate remedy at law, and the balance of hardships does not warrant injunctive relief.

## RESERVATION OF DEFENSES

AT&T hereby reserves the right to supplement defenses as discovery proceeds in this case.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for judgment as follows:

a.     A judgment dismissing Plaintiff's Complaint with prejudice;

b.     A judgment in favor of AT&T on all of their Defenses;

c.      A judgment that AT&T has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claims of the Asserted Patents;

d.      A judgment that the Asserted Patents are invalid;

e.      A judgment that the Asserted Patents are unenforceable;

f.      An award to AT&T of their fees and expenses of litigation;

g.      A judgment limiting or barring Plaintiff's ability to enforce the Asserted Patents in equity;

h.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, Defendants respectfully demand a jury trial of all issues triable to a jury in this action.

Dated:  December 11, 2023                    Respectfully submitted,

/s/ Matthew S. Yungwirth
Matthew Sean Yungwirth
msyungwirth@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, NE
Suite 1700
Atlanta, GA 30309-3929
Telephone:  404.253.6935
Facsimile:  404.253.6901


Deron R. Dacus (TBN
00790553)
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.** 821
ESE Loop 323
Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117
Facsimile: 903.581.2543

William Andrew Liddell
waliddell@duanemorris.com
**DUANE MORRIS LLP**
900 S. Capital of Texas Hwy
Suite 300
Austin, TX 78746
Telephone:  512.277.2272
Facsimile:  512.227.2301

*Counsel for Defendants AT&T Services, Inc.,*
*AT&T Mobility LLC and AT&T Corp.*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 11, 2023.

*/s/ Matthew S. Yungwirth*
Matthew S. Yungwirth